COMMONWEALTH *vs.* COMMISSIONER OF BANKS *in re* PRUDENTIAL TRUST COMPANY.
SAME *vs.* SAME *in re* HANOVER TRUST COMPANY.
SAME *vs.* SAME *in re* COSMOPOLITAN TRUST COMPANY.

Suffolk.     October 21, 1921. — January 14, 1922.

Present: RUGG, C.J., CROSBY, CARROLL, & JENNEY, JJ.

*Commonwealth. Commissioner of Banks. Trust Company,* In liquidation. *Statute,* Construction. *Equity Pleading and Practice,* Parties, Petition to intervene. *Supreme Judicial Court, Amicus curiae.*

The commissioner of banks is an executive and administrative officer with powers and duties defined by statute, and, when he is in possession of the property and business of a trust company under G. L. c. 167, § 22, he acts in all particulars as a public officer and not as a receiver appointed by a court.

It is a general principle of statutory construction that, when legislation covers an entire field, previous provisions either of the common law or of statutory law in conflict therewith become no longer operative.

The General Court has dealt comprehensively with the subject of liquidation of banks and has established all the preferences among creditors intended to exist.

The Commonwealth as a creditor in the commercial department of a trust company, of whose property and business the commissioner of banks has taken

possession under G. L. c. 167, § 22, should not be given a preference over other general creditors of the trust company.

In a bill in equity by the Commonwealth against the commissioner of banks, in possession under G. L. c. 167, § 22, of the property and business of a trust company, seeking a decree that a debt, admitted by the commissioner to be due to the Commonwealth in the commercial department of that bank, be preferred before all general debts of the bank except those due the United States, the commissioner is the representative both of the trust company and of all depositors other than the Commonwealth, and neither the trust company nor the depositors are necessary parties.

Upon a reservation for determination by this court of three suits of the above description, relating to the affairs of three trust companies, upon the bills, answers of the commissioner and petitions to intervene by creditors in the commercial departments of the banks and by one of the trust companies, it *was stated* that the question, whether in the exercise of sound judicial discretion the petitions to intervene ought to be allowed, was not presented. The petitioners, however, were treated by this court so far as concerned the main issue as *amici curiae* and full consideration was given to their arguments and briefs.

THREE BILLS IN EQUITY, the first two filed in the Supreme Judicial Court on June 30, and the third on July 1, 1921, each against the commissioner of banks, the first seeking a decree that a debt of $40,000, admitted by the commissioner in possession under St. 1910, c. 399, § 2, of the property and business of the Prudential Trust Company, to be due to the Commonwealth in the commercial department of that bank, be preferred before all general debts of the bank except debts due to the United States, and that the commissioner be directed to pay the indebtedness in full, with interest. In the second and third suits the Commonwealth sought the same relief with respect to debts of $125,000 and of $517,472.41, admitted by the commissioner to be owed to the Commonwealth in their commercial departments, respectively by the Hanover Trust Company and by the Cosmopolitan Trust Company, of whose property and business he was in possession.

In the first suit, J. E. Doherty Company, a Massachusetts corporation and a creditor in the commercial department of the Prudential Trust Company, filed a petition to intervene to oppose the granting of the relief sought in the bill. In the second suit a similar petition was filed by the trustees in bankruptcy of Charles Ponzi, as creditors in the commercial department of the Hanover Trust Company. In the third suit petitions to intervene were filed, as creditors in the commercial department of the Cosmopolitan Trust Company, by the National Bank of the Republic, by

the First National Bank of Chicago, by Banco Di Napoli and by the Norfolk Hardening Works, Inc. In the third suit, also, the Cosmopolitan Trust Company in its corporate capacity sought to intervene to oppose the granting of the relief sought in the bill.

Each suit was reserved by *Pierce,* J., upon the bill and answer, and "upon the further question whether the intervening petitioners, or either of them, had as matter of law a right to intervene and maintain the answers contained" in their intervening petitions.

*E. H. Abbot, Jr.,* Assistant Attorney General, for the Commonwealth.

*J. E. Hannigan,* for the commissioner of banks *in re* Prudential Trust Company.

*D. T. O'Connell,* for J. E. Doherty Company, petitioner for leave to intervene.

*F. H. Smith, Jr., & N. N. Jones,* for the commissioner of banks *in re* Hanover Trust Company.

*J. A. Lowell, (W. R. Sears* with him,) for the trustees of Charles Ponzi, petitioners for leave to intervene.

*D. L. Smith, (H. O. Cushman* with him,) for the commissioner of banks *in re* Cosmopolitan Trust Company.

*H. Williams, Jr., (F. O. White* with him,) for the Cosmopolitan Trust Company and the Norfolk Hardening Works, Inc., petitioners for leave to intervene.

RUGG, C.J.     The defendant in these cases is in possession of the property and business of the several trust companies by virtue of the power exercised by him as commissioner of banks under St. 1910, c. 399, § 2, G. L. c. 167, § 22. The Commonwealth, through the action of the Treasurer and Receiver General, was, at the time such possession was taken, a general depositor to large amounts in each of the trust companies. The object of these suits by the Commonwealth is to secure for itself as a preferred claimant a priority over other general creditors in the payment of the amounts of its deposits.

It is not contended that any such preference is established by the express terms of any statute. The argument in behalf of the Commonwealth rests upon two main propositions: First, that by the common law here prevailing the Commonwealth is entitled to preference, *Giles* v. *Grover,* 1 Cl. & Fin. 72, *Central*

*Bank & Trust Corp.* v. *State,* 139 Ga. 54, *Aetna Accident & Liability Co.* v. *Miller,* 54 Mont. 377, *Matter of Carnegie Trust Co.* 206 N. Y. 390, *Marshall* v. *New York,* 254 U. S. 380, and, second, that the court will adopt and follow in proceedings of this nature the preferences established for the benefit of the Commonwealth in receivership proceedings by R. L. c. 150, § 29, G. L. c. 216, § 118, under the doctrine declared and applied in *Jones* v. *Arena Publishing Co.* 171 Mass. 22, and *Old Colony Trust Co.* v. *Medfield & Medway Street Railway,* 215 Mass. 156, 162, to the effect that equity will follow the law in respect of statutory preferences.

It is not necessary to examine critically these propositions because, assuming, without deciding, that they are both sound and applicable in appropriate cases, they are not operative upon the facts and statutes here disclosed. The contention of the Commonwealth cannot be sustained for other reasons.

The statute which establishes and regulates the powers of the commissioner of banks makes no provision for preference of debts or other obligations due to the Commonwealth. The commissioner is an executive or administrative officer. He exercises visitorial powers, is charged with duties of rigid inspection, and, when circumstances exist enumerated in St. 1910, c. 399, § 2, G. L. c. 167, § 22, may take and retain possession of the property and business of the bank for the purpose of liquidation of its affairs in accordance with the statute. He acts in all these particulars as a public officer and not as a receiver appointed by the court. While he possesses some powers commonly conferred upon a receiver and in many respects is subject to the direction of the court, he nevertheless carries out directly and in his own official capacity a legislative policy. His chart is the legislative mandate as declared in the statute. *Greenfield Savings Bank* v. *Commonwealth,* 211 Mass. 207, 209.

The Supreme Judicial Court is given jurisdiction in equity "to enforce the provisions" of the statute and "to act upon all applications and in all proceedings thereunder." G. L. c. 167, § 36. Thus the power of the court, while not strictly circumscribed, is to a greater or less extent, within limits which need not here be defined, bounded by the terms of the statute.

The statute by which the legislative policy is declared contains no preference for debts or obligations due to the Commonwealth.

Where it has been the purpose of the General Court to give a preference to claims of the Commonwealth, that commonly has been stated in express words. The earliest preference declared by statute since the Constitution related to insolvent estates of deceased persons. St. 1784, c. 2. While in its original enactment preference was given to debts due to the Commonwealth, as well as to taxes and excises, that was narrowed by the omission of debts in Rev. Sts. c. 68, § 1, and now by G. L. c. 198, § 1, preference is given only to "Public rates, taxes and excise duties."

Under the insolvent laws of the Commonwealth (of course, suspended in operation by the federal bankruptcy law) "debts due to and taxes assessed by the Commonwealth, or a county, city or town therein" are given a preference. G. L. c. 216, § 118. The same preferences are established as to settlements of estates by receivers. G. L. c. 206, § 31.

In view of these express preferences established by statute, which are not uniform nor coextensive but place estates of deceased persons upon a different footing from estates settled by receivers or under the insolvency laws, the omission of any such preference in the banking law is significant.

The insolvency law does not apply to banks. G. L. c. 216, § 143. It never has included them. They have been the subject of special statutes. A bank was closed under St. 1838, c. 14, which, like G. L. c. 167, contained no preference for debts due to the Commonwealth. When liquidation arose it was not suggested in argument by distinguished counsel or in the opinion by Chief Justice Shaw that the debt due to the Commonwealth from the bank was entitled to priority for full payment over other creditors. *Commonwealth* v. *Phœnix Bank*, 11 Met. 129.

The powers of the trust companies here in liquidation are set forth in G. L. c. 172, § 31, embodying the substance of R. L. c. 116, § 12, as amended by St. 1912, c. 54, St. 1914, c. 537, § 3, in these words: "Such corporation may receive on deposit, storage or otherwise, money, government securities, stocks, bonds, coin, jewelry, plate, valuable papers and documents, evidences of debt, and other property of any kind, upon terms or conditions to be agreed upon, and at the request of the depositor may collect and disburse the interest or income, if any, upon said property received on deposit and collect and disburse the principal of such of said

property as produces interest or income when it becomes due, upon terms to be prescribed by the corporation. Such deposits shall be general deposits, and may be made by corporations and persons acting individually or in any fiduciary capacity. Such corporation shall not give collateral or other security for a deposit of money received under this section, except that the corporation may make such a deposit of securities as may be required by the laws of the United States or the rules and regulations of the trustees of the postal savings system as security for deposits of postal savings funds made with such corporation and may give such collateral or other security for deposits of public or other funds as may be required by any public authority making such deposits or controlling the terms upon which they may be made." The deposits of money which these trust companies were authorized to receive were "general deposits," with the exception that they might give collateral or other security for deposits required by a "public authority." Manifestly the Treasurer and Receiver General was a "public authority" within the meaning of those words in the statute. He might have insisted upon "collateral or other security" as a condition to making a deposit. If the Commonwealth were entitled to an absolute preference in the payment of its deposits, it is unlikely that trust companies would be authorized to give him additional collateral or other security. The requirement of the statute that moneys received on deposit shall be "general deposits" (with the specified exceptions) implies that they shall all be commingled on the same footing of relation of debtor by the bank and creditor by the depositor without special preference of one creditor over another. See *National Mahaiwe Bank* v. *Peck*, 127 Mass. 298.

The correlative to G. L. c. 172, § 31, is found in G. L. c. 167, § 32, whereby are defined the duties of the commissioner in possession of the property and business of a bank. In said § 32 the rights of special depositors of jewelry, plate, money and other valuables for safe keeping with the bank are set forth in detail and the method to be followed by the commissioner in returning such special deposits to their owners is outlined. The distinction between general depositors and special depositors thus is emphasized. That no other special preferences are established in the statute is an indication that none were intended by the General Court.

An important part of the law concerning trust companies relates to savings departments. St. 1908, c. 520, §§ 1 to 7, G. L. c. 172, §§ 60 to 72. It there is provided (§ 4, c. 520, § 63, c. 172) that the depositors in the savings department shall have as security for payment of their claims the capital stock of the company and the liability of stockholders, but also that they shall have in addition to other security "an equal claim with other creditors. upon the capital and other property of the corporation." This implies that "other creditors" includes depositors in the commercial department and imports that such other creditors are all on the same footing. If there were preferences or priorities among such "other creditors," it would be difficult to give to depositors in the savings department an "equal claim with other creditors." The main reason for this provision is that the security otherwise provided under the law may be insufficient to pay in full the claims of the depositors in the savings department. The terms of the statute and the general favor therein manifested for depositors in the savings department would seem to require, that, if there are preferences, the savings department depositors ought to be equal to the most favored class. If they share equally with the most favored class and the Commonwealth is held entitled to an absolute preference for the full payment of its claims, grave difficulties in liquidation well might arise.

If it had been the design of the Legislature that the Commonwealth as a depositor in a trust company in liquidation should be entitled to an absolute priority for the payment in full of its claims in preference to all other creditors, it is likely, in view of other provisions of the statute, that there would have been some expression to that effect in the words of the statute. An omission of all reference to the subject is significant of a purpose to place the Commonwealth on the same basis as other general creditors.

These considerations lead to the conclusion that the General Court has dealt comprehensively with the subject of liquidation of banks and trust companies and has established by its mandate all the preferences intended to exist. It is a general principle that, when legislation covers the entire field, previous provisions of either the common or statutory law in conflict therewith become no longer operative. *Doyle* v. *Kirby*, 184 Mass. 409. *Attorney*

*General* v. *New York, New Haven & Hartford Railroad,* 197 Mass. 194. *Crocker* v. *Justices of the Superior Court,* 208 Mass. 162, 178. *Warr* v. *Collector of Taxes of Taunton,* 234 Mass. 279, 282.

This result is in harmony with the interpretation placed upon the federal statute concerning the liquidation of national banks in *Cook County National Bank* v. *United States,* 107 U. S. 445.

There is nothing inconsistent with this result in *Jones* v. *Arena Publishing Co.* 171 Mass. 22. In that case an insolvent corporation was being liquidated in equity by a receiver instead of under the State insolvent law, and it was held that the preferences established by the statutes as to insolvent corporations should be followed. The decision in the case at bar rests upon an interpretation of the statute concerning liquidation of banks by the commissioner, which must be followed by a court of equity when its aid is invoked to facilitate such liquidation. For the same reason the dictum in *Old Colony Trust Co.* v. *Medfield & Medway Street Railway,* 215 Mass. 156, 163, is not applicable to the case at bar.

The reservation in each case presents the question whether certain petitioners have as matter of law a right to intervene and answer. These petitioners for intervention are of two classes: (1) one of the trust companies in liquidation, (2) general depositors in the trust companies.

In the cases at bar there is no adversary interest between the commissioner on the one side and the trust companies and their general depositors and their savings depositors on the other. The commissioner in each case has taken a firm stand against the allowance of a preference to the Commonwealth as a depositor. This is the contention presented both by each trust company and by the other depositors.

The tenor of the statutes respecting liquidation of banks makes the commissioner the representative in cases like those at bar, both of the trust companies and of all depositors other than the Commonwealth. St. 1910, c. 399, §§ 3, 4, 5, 8, 11. G. L. c. 167, §§ 23, 24, 25, 28, 31. He is given express authority by § 5 (§ 25) in the name of the trust company to prosecute and defend all suits and other legal proceedings. The trust companies by accepting charters from the Commonwealth and all the depositors by becoming depositors in the trust companies impliedly agreed to

be bound by the valid controlling statutes and must abide by them when the company goes into liquidation. *Selectmen of Clinton* v. *Worcester Consolidated Street Railway,* 199 Mass. 279, 285. *Interstate Consolidated Street Railway* v. *Massachusetts,* 207 U. S. 79, 84. No question is presented on this record involving antagonistic interests between the commissioner and those seeking to become intervenors. The commissioner is authorized by law in the cases at bar to represent the interests of those petitioning to intervene. So far as they have material interests in the issues involved in these suits they are beneficiaries and the commissioner in a trust capacity represents them. As to the main questions here raised, the Commonwealth is a stranger seeking to establish an extraordinary claim against the trust fund, of which those petitioning to intervene are beneficiaries. All their interests are fairly and sufficiently represented by the commissioner, whose duty it is to protect them. He is acting in the performance of that duty. He is executing and defending the trust imposed on him by the law, and in that respect he represents the companies and the depositors in general, who, although their rights are to be affected, are not necessary parties as individuals.

The statute is an attempt to formulate a practical plan for the speedy and just administration in liquidation of banks in which doubtless many thousands of persons ordinarily would be interested. To hold that as individuals the depositors have rights to come into each litigation by which their financial interests are affected would be to open the door to great abuses and would subserve no useful purpose, because they are or ought to be fully protected by the commissioner. In this particular the cases at bar are within the scope of the principles declared in numerous cases. *John Hancock Mutual Life Ins. Co.* v. *Lester,* 234 Mass. 559, and cases collected at page 562. *Davis* v. *Gray,* 16 Wall. 203, 232. *Kerrison* v. *Stewart,* 93 U. S. 155. *Vetterlein* v. *Barnes,* 124 U. S. 169. *Wightman* v. *Evanston Yaryan Co.* 217 Ill. 371. *Dennis* v. *Spencer,* 51 Minn. 259. *Mann* v. *Bruce,* 1 Halst. Ch. 413. See *Hartford Life Ins. Co.* v. *Ibs,* 237 U. S. 662, 671, 672.

Whether in the exercise of sound judicial discretion the petitions to intervene ought to be allowed is not presented by these records. They have been treated in this court so far as concerns the main

issues as *amici curiae*, and full consideration has been given to their arguments and briefs.

In each case the entry may be

*Petition dismissed with costs.*