(No. 6093. June 23, 1934.)

WALTER J. LLOYD, Respondent, v. BEN DIEFENDORF, Commissioner of Finance of the State of Idaho, and H. A. COLLINS, Liquidating Agent of the CITIZENS BANK AND TRUST COMPANY, a Defunct Banking Corporation of Idaho, Appellants.

[34 Pac. (2d) 53.]

608

B. W. Davis, for Appellants, cites no authorities on points decided.

R. W. Jones, for Respondent.

HOLDEN, J.—Respondent was employed as a teller, on a monthly salary, by the Citizens Bank and Trust Company of Pocatello, Idaho. September 23, 1931, the bank closed its doors and appellant, as Commissioner of Finance of the state of Idaho, took possession. Thereafter H. A. Collins was appointed liquidating agent for the bank. On the day the bank failed, it was indebted to the respondent in the sum of $110, on account of services rendered the bank within a period of sixty days immediately prior to September 23, 1931. On that date the bank was also indebted to Vanola Courtney, Emma Lou Borneman, Howard M. Carney and Gust Panousis, for services rendered the bank, within a like period. Thereafter the respondent, as well as the last above named persons, filed duly verified claims with the liquidating agent. All claimed a preference under subdivision 2,

section 25–915, I. C. A. All of the claims were allowed, but classified under subdivision 4 of that section, the preferences claimed being denied. April 27, 1932, each claimant was served with notice of the allowance of his, or her, claim, with a lower priority than that claimed. No appeal was taken by any of the claimants from the order of priority given the claims by the commissioner. June 29, 1932, Vanola Courtney, and the others above named, assigned their claims to the respondent, and on July 16, 1932, an action was commenced by respondent against appellant, in the probate court of Bannock county, to recover on his own, as well as on the assigned claims. Respondent recovered judgment in the probate court upon all of the claims, and the commissioner appealed to the district court of that county, where respondent again recovered on all of the claims. The case comes into this court on an appeal from the judgment of the district court, the case having been tried in that court without a jury.

The complaint contains five counts, one on respondent's claim for services, and one on each of the four assigned claims for services. The counts are identical, with the exception that as to the assigned claims, an assignment of the particular claim is pleaded in the usual form. As a first cause of action respondent pleads his claim for the services he rendered the bank, as follows:

"1. That on or about the 23rd day of September, 1931, the defendant, Ben Diefendorf, as Commissioner of Finance of the State of Idaho, took possession of the Citizens Bank & Trust Company, of Pocatello, and has had charge of said defunct banking corporation since said date aforesaid.

"2. That the defendant, H. A. Collins, has heretofore been duly appointed and is now the duly qualified and acting liquidating agent for the Citizens Bank & Trust Company, a defunct banking corporation.

"3. That at the time of the closing of the said Citizens Bank & Trust Company aforesaid, the plaintiff was employed as a bank teller, working in said bank, and had been so employed for some time prior thereto; that at the time of the closing of the said Citizens Bank & Trust Com-

pany, as aforesaid, the said Citizens Bank & Trust Company was indebted to the plaintiff for services rendered within the period of sixty (60) days next preceding thereto in the sum of One Hundred Ten ($110.00) Dollars; that no part of said sum of $110.00 has been paid, and there is now due, owing and unpaid to the plaintiff herein; that demand therefor has been made under and pursuant to the statutes in such case made and provided, but payment has been neglected and refused.

"That by reason of the failure of the defendants herein to pay the plaintiff for services rendered, as aforesaid, the plaintiff has been compelled to employ an attorney to institute this suit and prosecute his cause of action; that the plaintiff has promised to pay his attorney a reasonable sum as attorney fee for the presentation and prosecution of this action, and alleges that the sum of Fifty ($50.00) Dollars is a reasonable attorney fee to be allowed by the Court."

The answer pleads the filing of a duly verified salary claim, asking a class 2 preference under section 25–915, *supra*, the allowance of the claim, with a class 4 preference, the denial of a class 2 preference, and service of notice of such allowance and priority, as above stated. There is no dispute as to the facts.

Respondent's action, it will be noted, is not against the bank, but against the Commissioner of Finance of the State of Idaho, as such. Respondent clearly bottoms his right to recover, and for preference, upon section 44–601, I. C. A., reading as follows:

"In all assignments of property made by any person to trustees or assignees, or in proceedings in insolvency, the wages of the miners, mechanics, salesmen, servants, clerks or laborers for services rendered within sixty days next preceding such assignment, not exceeding $150.00, are preferred claims and must be paid by such trustees or assignees before any creditor or creditors of the assignor or insolvent debtor: provided, that whenever any such miner, mechanic, salesman, servant, clerk or laborer has filed a notice of lien

against any property of the assignor, he may elect between the provisions of this section and his lien."

That section was formerly section one, of chapter IV, of an act passed in 1893 (Sess. Laws 1893, p. 49), entitled "An Act to secure liens for mechanics, laborers, material men and other persons." In 1921, about twenty-eight years later, what is generally known as the "bank act" was passed.

The order of payment of the debts of a bank liquidated by the commissioner of finance pursuant to the provisions of section 25–915, I. C. A., of the present "Bank Act," is: 1. The expense of liquidation, including compensation of agents, employees and attorneys. 2. All funds held by the bank in trust. 3. Debts due depositors. 4. All contractual liabilities *pro rata*. 5. Interest on all classes of claims without regard to priority. 6. Unliquidated claims for damages and the like. So that the question involved in this case, is: Does section 44–601, *supra*, control, or is section 25–915, exclusive?

Under the statute designated the "Bank Act," title 25, vol. 2, I. C. A., elaborate and detailed provisions are made for the organization and control of savings banks, commercial banks and trust companies. The statute controls the amount of their capital and places limitations on loans and investments. They are subjected to the inspection and supervision of the commissioner of the department of finance. The commissioner must examine these banks at least twice a year, and oftener if he deems it necessary and they are required to make at least three exhaustive reports during each calendar year, as well as supplemental reports, if required by the commissioner. And under any of the circumstances stated in section 25–901, I. C. A., the commissioner is authorized to close any savings bank, commercial bank or trust company and take possession of all its books, records, assets and business of every description, and proceed to liquidate any such bank. We do not deem it necessary to set forth in full the statutory provisions referred to, but we may add to what has already been said that our "Bank Act" constitutes a complete system for the organization and government of state banking institutions

and that the regulation of state banks is most minutely and comprehensively provided for. The statute covers the entire banking field and declares a legislative policy concerning banks and banking.

The federal act relating to national banks is similar to our Bank Act. In *Cook County Nat. Bank v. United States,* 107 U. S. 445, 2 Sup. Ct. 561, 27 L. ed. 537, the court, speaking by Justice Field, said:

"We consider that act as constituting by itself a complete system for the establishment and government of national banks, prescribing the manner in which they may be formed, the amount of circulating notes they may issue, the security to be furnished for the redemption of those in circulation, their obligations as depositaries of public moneys, and as such to furnish security for the deposits, and designating the consequences of their failure to redeem their notes, their liability to be placed in the hands of a receiver, and the manner, in such event, in which their affairs shall be wound up, their circulating notes redeemed, and other debts paid or their property applied towards such payment. Everything essential to the formation of the banks, the issue, security, and redemption of their notes, the winding up of the institutions, and the distribution of their effects, are fully provided for, as in a separate code by itself, neither limited nor enlarged by other statutory provisions with respect to the settlement of demands against insolvents or their estates."

It is a general principle that the enactment of a statute, seemingly designed to embrace completely a branch of administrative law, impliedly repeals and supersedes all the provisions of a statute inconsistent and repugnant thereto, to the extent that the statutes are in conflict. (Cook County Case, *supra; Commissioner of Banks v. Highland Trust Co. et al.* (Supreme Judicial Court of Mass.), 186 N. E. 229; *Commerce Trust Co. v. Farmers Exchange Bank et al.,* 332 Mo. 979, 61 S. W. (2d) 928, 89 A. L. R. 373; *Cosmopolitan Trust Co. v. Suffolk Knitting Mills et al.,* 247 Mass. 530, 143 N. E. 138; *Commonwealth v. Allen,* 240

Mass. 244, 133 N. E. 625; *State v. Norman,* 86 Okl. 36, 206 Pac. 522.)

Sections 3 and 11 of the Bank Act of 1921 (Sess. Laws 1921, p. 53) and sections 25–905 and 25–913, are identical, and all the applicable provisions of that statute and the existing Bank Act, *supra,* are substantially the same. In *Bybee v. D. W. Standrod & Co.,* 44 Ida. 708, 260 Pac. 157, this court held:

"The purpose of Laws 1921, chap. 42, is to sequester the assets of an insolvent bank and place them for purposes of liquidation in the hands of the commissioner of finance, to be by him administered for the benefit of all claimants, such method of liquidation to be exclusive.

"Under Laws 1921, chap. 42, secs. 3, 11, the commissioner of finance, liquidating an insolvent bank, cannot as such be sued on claim against it, and it can be sued only on permission by him or on his rejecting a claim presented against it.

"Complaint against bank, being liquidated by commissioner of finance, to state cause of action, must allege either permission from him to so sue or presentation to and rejection by him of claim, one or the other of which facts is necessary under the statute to authorize the action."

While *Bybee v. D. W. Standrod & Co., supra,* was a suit to recover deposits alleged to have been accepted by that bank while insolvent, this court stated that "the controlling question in this case is whether or not chap. 42, Sess. Laws 1921, provides an exclusive method of recovery by a claimant against an insolvent bank in the hands of the bank commissioner." And the controlling question here, is: Does our Bank Act, *supra,* provide an exclusive method of recovery by a claimant against an insolvent bank in the hands of the commissioner of finance?

It is clear to our minds that the Bank Act, *supra,* was intended to, and does, constitute a complete system for the organization, regulation and liquidation of state banks, covering the entire field, and every phase and ramification thereof, and, therefore, repeals and supersedes any and all

of the provisions of section 44–601, *supra*, in conflict therewith, and is exclusive.

The judgment is reversed and the case remanded, with instructions to dismiss the action. Costs awarded to appellants.

Budge, C. J., and Givens, Morgan and Wernette, JJ., concur.