[File No. 6539.]

## IN THE MATTER OF THE ASSIGNMENT FOR THE BENEFIT OF THE CREDITORS OF HENRY L. WHITE.

## STATE OF NORTH DAKOTA, Appellant, v. CARTHER JACKSON and D. G. Kelly, Respondents.

(284 N. W. 357.)

Opinion filed February 18, 1939.

62

*Alvin C. Strutz,* Attorney General, and *I. F. Wagner,* for appellant.
*Murphy, Toner, & Kilgore,* for respondents.

MORRIS, J. On August 14, 1936, Henry L. White, who had there-tofore been engaged in business as a licensed retailer, made an assign-ment of his business for the benefit of his creditors to the defendants as trustees. . The assignment was made by an instrument known as a trust deed, which conveyed all of the grantor's property except house-hold furniture and wearing apparel to the trustees, who were author-ized to continue the business or to close it out and pay off the creditors. The state of North Dakota filed a claim with the assignees for sales tax due from White to the state of North Dakota upon sales made prior to the assignment which the court allowed as a general claim in the sum of $637.05. The state contended that this was a preferred claim entitled to be paid in full, and the assignees contended that this claim was not entitled to preference and should share pro rata in the dis-tribution of the assets. The taxes which constitute the basis of the claim were imposed by the Retail Sales Tax Act, being chapter 276, N. D. Session Laws 1935. This act provided for a tax of 2 per cent upon the gross receipts from all sales of tangible personal property, with certain exceptions, which were sold at retail in the state of North Dakota to consumers or users from May 1, 1935 to May 1, 1937. It also provided for the licensing of retailers and throughout the act the retailer is referred to as the taxpayer. Certain penalties are imposed upon the retailer for failure to pay the tax upon his tangible gross re-tail sales. It is suggested that the consumer is in reality the taxpayer, and the retailer is merely the agent of the state in collecting the tax. The law requires the retailer to add the tax imposed by the act or the average equivalent thereof to the sales price. It also provides that this price or charge "shall be a debt from consumer or user to retailer until paid, and shall be recoverable at law in the same manner as other debts." While under the law the amount of the tax is ultimately paid by the consumer, nevertheless, the transaction taxed is the sale by the retailer and not the purchase by the consumer. The taxpayer, who is

responsible for the payment of the tax to the state, is the retailer, whose liability is not measured by the amount actually collected from the purchaser, but by the gross sales which he is required to include in his return and upon which the tax is imposed. Chapter 276 does not provide for a lien upon the retailer's property for taxes which he may owe to the state. Such tax merely constitutes a tax debt. The state contends that under the common law it was the prerogative of the sovereign to have his debts paid out of a debtor's property in preference to the debts of other creditors and that the state has succeeded to this preference in the absence of statute. On the other hand, the defendants contend that since there is no statute establishing either a lien or a preference for sales tax, that the state has a claim against the estate of an insolvent debtor which is on a par with the claims of other unsecured creditors and must share pro rata with them in the distribution of the estate.

The trial court held with the defendants and this appeal is taken from its order denying the state a preference. It is unnecessary to determine whether the state may in a proper case assert the common-law prerogative of the sovereign to have its debts paid from the estates of insolvents in preference to those of other unsecured creditors. The common law does not enter into the determination of the status of a debt due the state for sales taxes. "It is a general principle that, when legislation covers the entire field, previous provisions of either the common or statutory law in conflict therewith become no longer operative." Com. v. Commissioner of Banks, 240 Mass. 244, 133 N. E. 625; Fry v. Equitable Trust Co. 264 Mich. 165, 249 N. W. 619, 90 A.L.R. 175. Restrictions upon the common law in this state appear to go farther than repeals thereof by the enactment of statutes in conflict therewith. We have the following pertinent statutory declarations dealing with the extent of the common law in this state. Section 4331, N. D. Compiled Laws 1913, "In this state there is no common law in any case where the law is declared by the codes." Section 7312, N. D. Compiled Laws 1913, "The rule of the common law that statutes in derogation thereof are to be strictly construed has no application to this code. *This code establishes the law of this state respecting the subject to which it relates;* and its provisions are to be liberally construed with a view to effect its objects and to promote justice."

It follows from these sections that if a particular statute is so designed that it covers the entire field to which it relates, it does so to the exclusion of the common law. An examination of chapter 276, N. D. Session Laws 1935, discloses it to be an enactment complete within itself, imposing a tax upon the gross receipts from retail sales. The title to the act indicates that in addition to imposing the tax, it is also its purpose "to provide for the collection of such tax, the distribution and use of the revenue derived therefrom, and the administration of said law; . . ."

This act for the first time introduces into North Dakota the sales tax as a general revenue measure. Besides creating the tax, the statute provided a system of collection and administration. It required all retailers to obtain permits from the tax commissioner for a fee of fifty cents. It also required the retailers to file returns from which the amount of the tax might be determined and gave the commissioner power to estimate the tax due upon failure of the retailer to make a return. The taxpayer had the privilege of appealing from the decision of the commissioner to the district court. Further, appeal was also provided from the district to the supreme court. A penalty was imposed upon the taxpayer for a failure to file a return. Persons who undertook to sell at retail without a permit were made guilty of a misdemeanor. A criminal penalty was provided for making a false or fraudulent return. A power of subpoena was granted the commissioner to aid him in administering the law.

Thus it appears that the legislature set up an act covering the entire sales tax field and specifically included the method of collection. Because it now appears that something further might have been added to the statute to facilitate the collection of the tax against the estates of insolvent taxpayers, the court is not justified in supplying the seeming omission by resorting to the common law. To do so would be to disregard §§ 4331 and 7312, supra. The Sales Tax Act of 1935 "establishes the law of this state respecting the subject to which it relates; . . ." We will not draw upon the common law to add to this statute a method of collection which the legislature did not provide or to supply a right of priority which could have been, but was not provided.

by the makers of the law. The trial court properly declined to declare a preference in favor of the state.

Affirmed.

NUESSLE, Ch. J., and BURR and CHRISTIANSON, JJ., concur.

BURKE, J., did not participate.