462 P.2d 54

**Zona Marie MEADE, surviving widow of Melford O. Meade, Deceased, Richard Meade and Denise Irene Meade, minors, by Zona Marie Meade, their Guardian, and Cynthia Meade, Plaintiffs-Appellants,**

**v.**

**John E. FREEMAN, Pedro Arana, and C. E. Celestine, Defendants-Respondents.**

**No. 10249.**

Supreme Court of Idaho.

Aug. 28, 1969.

Rehearing Denied Sept. 23, 1969.

Ariel L. Crowley, Idaho City, for appellants.

Coughlan & Imhoff, Boise, for respondents.

SHEPARD, Justice.

This case arrives here procedurally as a result of the dismissal of the complaint of plaintiffs-appellants. Defendants Arana and Celestine moved for summary judgment. The court construed the motion as one for dismissal (I.R.C.P. 12(b) (6)) and issued a memorandum decision and order of dismissal. The dismissal did not apply to defendant Freeman and the case is in abeyance as to him, pending the outcome of this appeal. Appellants assign such dismissal as error. For the purposes of the motion and this appeal, it is axiomatic that the well pleaded allegations of the complaint are deemed admitted. Walenta v. Mark Means Co., 87 Idaho 543, 394 P.2d 329 (1964).

The material allegations of the complaint in substance are: Arana and Celestine are owners and operators of premises licensed for the retail sale of liquor and located in Garden City, Idaho. The defendant Free-

man entered the premises while he was obviously, actually and apparently intoxicated. The defendants, either personally or through employees, served liquor to Freeman, well knowing or having good reason to know that Freeman upon leaving the premises would drive an automobile upon the highway. Freeman departed the premises and while still intoxicated negligently caused and was involved in an automobile accident in which one Meade was killed. Plaintiffs are the surviving widow and children of Meade and bring the action under the authority of Idaho's wrongful death statute, I.C. § 5–311. The serving of liquor to Freeman while he was intoxicated was in violation of our criminal statute. I.C. § 23–929.

The case then presents no factual issues to the court and neither party contends that there are factual issues. The facts are classic in their simplicity, but the legal questions presented are exceedingly complex and of first impression in Idaho. The trial judge concluded in his well reasoned memorandum decision that to support the plaintiffs' contentions and theory would require a change in the common law. He states that such is not the province of a district court and should be left to the decision of this Court.

I.C. § 73–116, provides:

"The common law of England, so far as it is not repugnant to, or inconsistent with, the constitution or laws of the United States, in all cases not provided for in these compiled laws, is the rule or decision in all courts of this state."

In earlier years many states adopted statutes commonly known as dram shop acts, which placed liability in various degrees upon vendors of intoxicants for the torts of their customers. Some states made the liability almost absolute while others established liability only when the vendor sold to an already intoxicated customer or to a minor. With the ebb of the temperance crusades and the repeal of that noble experiment called Prohibition, some states repealed their dram shop acts. As of 1966 some 21 states still maintained such statutes.

Idaho at one time did have a limited form of dram shop act. First passed in 1891 (S.L.1891, § 5, p. 34), it appeared as Idaho Political Code (1901), Ch. 58, § 1507.[1] In slightly amended form, it became Revised Codes of Idaho (1908), Ch. 33, § 1511, and remained in effect until 1915, when the entire state of Idaho adopted prohibition.

1. "Section 1507. Penalty for Selling to Drunkard After Notice Given: Any wife, mother, father, son, daughter or sister of a person who is an habitual drunkard, or in the habit of getting intoxicated, or the county commissioners, or the mayor of any city, or any county officer, may make complaint to any justice of the peace of the precinct where such person resides or may be staying, or to the probate judge of the county where such person resides or may be staying, alleging the name of such person, the fact of his being an habitual drunkard or in the habit of getting intoxicated, and name or names of the person or persons from whom the person having such habits obtains his liquor, as such relative or officer believes, which complaint shall be verified by the person making the same; whereupon said justice of the peace or said probate judge shall issue a notice in writing to such person or persons so named, notifying him or them that no intoxicating liquors of any kind must be sold or given away by him or them, or at his or their place or places of business, to such person having such habit, which notice must at once be served upon such person or persons as summons are served from justices' courts. After the service of such notice, if any person or persons so notified shall sell, or give away, or permit any person at his place of business to sell or give away, any intoxicating liquor to such person about whom he or they have received notice as aforesaid, his or their license to sell liquor shall, from that time, be deemed and held to be cancelled and annulled; and said person, and each of said persons, if more than one, shall be liable in a civil action brought in the name or for the benefit of the person making such complaint, in the sum of two hundred dollars for each offense, and the wife, if there be one, may bring such suit without uniting her husband as a party to the action."

S.L.1915, Ch. 28, §§ 1, 2, 3.[2] The prohibition statutes repealed by implication those statutes which previously had treated purveyance of intoxicants for beverage purposes as legitimate business, among which was the dram shop act. This fact is related to in a note preceding Compiled Laws (1918), Title 20, Ch. 116, at 662.[3] Since that time, no dram shop legislation has existed in Idaho.

As said by Llewellyn, on the common law in general:

"whatever one may say in praise of Our Lady of the Common Law (to whom I do bow), clarity and precise outline of her rules of law are not the chief jewel in her crown." Llewellyn, the Common Law Tradition.

■ However, it is quickly discerned that at common law no cause of action existed of the type for which appellants argue here. State for Use of Joyce v. Hatfield, 197 Md. 249, 78 A.2d 754 (1951); Lee v. Peerless Insurance Co., 248 La. 982, 183 So.2d 328 (1966); Cowman v. Hansen, 250 Iowa 358, 92 N.W.2d 682 (1958); Fleckner v. Dionne, 94 Cal.App.2d 246, 210 P.2d 530 (1949); Cole v. Rush, 45 Cal. 2d 345, 289 P.2d 450, 54 A.L.R.2d 1137 (1955); 48 C.J.S. Intoxicating Liquors § 430, p. 716 (1947, 1968 Supp.); 30 Am. Jur. 821, Intoxicating Liquors § 521 (1958, 1968 Supp.); Anno. 130 A.L.R. 357; Anno. 75 A.L.R.2d 833. Even those cases relied upon by appellant clearly state that the common law did not authorize such a cause of action, but those courts then proceeded to deal with statutes interpreted as changing the common law. Rappaport v. Nichols, 31 N.J. 188, 156 A.2d 1, 75 A.L.R.2d 821 (1959); Adamian v. Three Sons, Inc., 353 Mass. 498, 233 N.E.2d 18 (1968); Dissenting opinion, Fleckner v. Dionne, supra.

Appellants argue that liability of the type sought here should be imposed on a commercial vendor of intoxicants for a number of reasons. They argue that a combination of Idaho statutes together with certain decisions of this Court in the field of torts, when blended with decisions of a small minority of states, amalgamate to produce a liability which was unknown at common law. Appellants contend that our legislature changed the common law when it enacted our wrongful death statute. I.C. § 5–311. They further propose that decisions of this Court dealing with multiple causation, Pigg v. Brockman, 85 Idaho 492, 500, 381 P.2d 286 (1963), and cases cited therein; Lindhartsen v. Myler, 91 Idaho 269, 420 P.2d 259 (1966), and negligence per se, Petersen v. Parry, 92 Idaho 647, 448 P.2d 653 (1968); Riley v. Larson, 91 Idaho 831, 432 P.2d 775 (1967); Chard v. Bowen, 91 Idaho 521, 427 P.2d 568 (1967); Lundy v. Hazen, 90 Idaho 323, 411 P.2d 768 (1966); Bale v. Perryman, 85 Idaho 435, 380 P.2d 501 (1963); Brixey v. Craig, 49 Idaho 319, 288 P. 152 (1930), combine to establish: (1) that the act of serving liquor to one al-

---

2. "Section 1. The manufacture, disposal and transportation of intoxicating liquors for beverage purposes are prohibited in the State of Idaho.

Sec. 2. The State of Idaho is hereby constituted a prohibition district, and all statutory provisions now or which may hereafter be in force in prohibition districts, so far as the same are not inconsistent herewith, are made applicable and operative for the enforcement hereof.

Sec. 3. This Act shall be in force and take effect on and after January first, 1916."

3. "S.B. 50 was followed by a brief act creating the entire state a prohibition district, '15, c. 28, p. 83, § 1 of which also appears as § 1 herein. This act became effective January 1, 1916. It superseded the local option law, '09, S.B. 62, p. 9, §§ 1–14, and the high license provisions, R.C. §§ 1506–27, and various other statutory provisions recognizing the liquor traffic as a licensed occupation, e. g. R.C. §§ 2238, 6368, 6784, '09, S.B. 22, p. 410. Joy v. Carlson (1916) 28 I. 455, 154 P. 640; S. v. Frederic (1916) 28 I. 709, 155 P. 977. By reference it adopted the prior enactments for the enforcement of prohibition in prohibition districts. In this codification, on the authority of § 2 of said act and Re Crane, supra, the effect of state-wide prohibition has been carried out by omitting reference to prohibition districts and making the law of general application."

ready intoxicated is violative of a statute and hence negligence per se; (2) that there can be more than one proximate cause and therefore the consuming *and* serving of intoxicants can be multiple causes, and the consumption is not necessarily an intervening cause which shields the vendor. On supervening cause, see Lundy v. Hazen, supra; Dewey v. Keller, 86 Idaho 506, 388 P.2d 988 (1964); Smith v. Sharp, 82 Idaho 420, 354 P.2d 172 (1960).

· Appellants' theory runs squarely in the face of almost all authority. It is nearly universally held, State for Use of Joyce v. Hatfield, supra; Lee v. Peerless Insurance Co., supra; Cowman v. Hansen, supra; Fleckner v. Dionne, supra; Cole v. Rush, supra; 48 C.J.S. Intoxicating Liquors § 430, p. 716 (1947, 1968 Supp.); 30 Am.Jur. 821, Intoxicating Liquors § 521 (1958, 1968 Supp.); Anno. 130 A.L.R. 357; Anno. 75 A.L.R.2d 833, that it is the consumption of intoxicants that constitutes the proximate cause of damage to third parties resulting from the tortious or unlawful acts of the consumer and that the vending of intoxicants is too remote to be considered a proximate cause. Put another way, the common law holds that it is not actionable negligence to serve intoxicants to an able bodied man. Cruse v. Aden, 127 Ill. 231, 20 N.E. 73, 3 L.R.A. 327 (1889); Seibel v. Leach, 233 Wis. 66, 288 N.W. 774, 6 N.C.C.A. (N.S.)

629 (1939); 2 W. Woolen and W. Thornton, The Law of Intoxicating Liquors 1837, § 1029 (2 v., 1910); cf. Gardner v. Day, 95 Me. 558, 50 A. 892 (1901); Kraus v. Schroeder, 105 Neb. 809, 182 N.W. 364 (1921); see also Woody v. Coenan, 44 Iowa 19 (1876).

Appellants advert to the theories of "directly · traceable consequences" and "foreseeability" which combine in the so-called "risk rule" of legal cause. Dewey v. Keller, supra. See also Anno. 155 A.L.R. 157; 100 A.L.R.2d 942; "Impact of the Risk Theory on the Law of Negligence," 63 Harv.L.Rev. 671 (1950). Again, however, we point out that we are bound by the common law (in the absence of statute) stating that it is the consumption not the vending of intoxicants which is the proximate cause.

Appellants then point to our statutes controlling the sale of intoxicants, I.C. §§ 23-901, 23-929.[4] They theorize that the enactment of those statutes changes the common law alluded to above and call attention to certain cases sustaining their theory. This theory is the main thrust of appellants' argument and therefore the cited cases are worthy of review.

Two of the cases cited by appellants, Waynick v. Chicago's Last Department Store, 269 F.2d 322, 77 A.L.R.2d 1260 (7th Cir. 1959); and Colligan v. Cousar,

---

4. "23-901. Declaration of policy—Retail sale of liquor.—It is hereby declared as the policy of the state of Idaho that [it] is necessary to further regulate and control the sale and distribution within the state of alcoholic beverages and to eliminate certain illegal traffic in liquor now existing and to insure the entire control of the sale of liquor it is advisable and necessary, in addition to the operation of the state liquor stores now provided by law, that the commissioner of law enforcement of the state of Idaho and the county commissioners and the councils of cities and the trustees of villages in the state of Idaho be empowered and authorized to grant licenses to persons qualified under this act to sell liquor purchased by them at state liquor stores at retail posted prices in accordance with this act and under the rules and regulations promulgated by said commissioner of law enforcement and under his strict supervision and control and to provide severe penalty for the sale of liquor except by and in state liquor stores and by persons licensed under this act. The restrictions, regulations, and provisions contained in this act are enacted by the legislature for the protection, health, welfare and · safety of the people of the state of Idaho and for the purpose of promoting and encouraging temperance in the use of alcoholic beverages within said state of Idaho."

"23-929. Restriction of sales by licensee.—No licensee or his or its employed agents, servants or bartenders shall sell, deliver or give away, or cause or permit to be sold, delivered, or given away, any liquor to:

\*       \*       \*       \*       \*

2. Any person actually, apparently or obviously intoxicated.

\*       \*       \*       \*       \* "

38 Ill.App.2d 392, 187 N.E.2d 292 (1963), involved extraterritorial applications of Illinois' dram shop act and hence are not controlling nor relevant here other than to illustrate the lengths to which a minority of courts will reach out to establish liability. See, however, a partial repudiation in LeGault v. Klebba and Mazure, 7 Mich.App. 640, 152 N.W.2d 712 (1967).

The Florida case of Davis v. Shiappacossee, 155 So.2d 365 (Fla., 1963), involved the sale of beer and whisky to minors seated in an automobile which was analogized by the court as a dangerous instrumentality as contrasted with the establishment of an overall liability imposed on purveyors of intoxicants. See, however, a restriction in Reed v. Black Caesar's Forge Gourmet Restaurant, Inc., 165 So.2d 787 (Fla.App., 1964).

We arrive at consideration of the two cases principally relied upon by appellants, Rappaport v. Nichols, supra; Adamian v. Three Sons, Inc., supra, and the dissenting opinion in Fleckner v. Dionne, supra. In *Rappaport* the court had for consideration a factual situation similar to the one presented in the case at bar, except that the alleged unlawful sale had been made to a minor. That court recognized that no liability would have attached to the liquor vendor at common law. It was pointed out that in prohibition days New Jersey had had a civil damage act establishing liability of the type sought, but that the statute had been repealed. The court reviewed the alcohol beverage control act of New Jersey, which is similar to our Idaho liquor control statutes, and held that those statutes by inference authorized and restored the cause of action which had previously been explicitly provided for by statute and which statute was later repealed. The court further went on to restrict the established liability to commercial vendors and to hold not liable those persons not engaged in the commercial vending of liquor, but who presumably give away liquor to guests in their home.

In *Adamian* the Massachusetts court was also faced with an early dram shop act establishing the liability sought here, which statute had been repealed by the legislature. That court, not to be daunted in its search for liability, implied the establishment of liability under liquor control statutes similar to Idaho's and stated:

"The legislative policy, being clear, is not to be rendered futile of practical accomplishment because of the repeal at the end of the prohibition era of the dram shop act which gave an express right of action to persons suffering damage due to a violation of the act."

We cannot agree that legislative policy is clear when the legislature by statute establishes liability and then specifically repeals the statute at a later time. To state, in such a situation, that the legislature intended the continuation of the liability flies in the face of all logic.

We believe the later Massachusetts case of Dimond v. Sacilotto, 353 Mass. 501, 233 N.E.2d 20 (1968), points out some of the undesirable results of *Adamian*.

We believe that appellants' argument, stripped of all embellishments, reduces itself to the basic question: Has our legislature authorized a new cause of action against a purveyor of intoxicants, and if our legislature has not, should this Court declare a new cause of action?

Appellants argue that the enactment of statutes forbidding the retail dispensing of liquor to persons already intoxicated were intended to protect the public against the acts of intoxicated persons. The deceased was a member of the public and he and appellants here were damaged by a person to whom liquor had been dispensed in violation of the statute.

Ignored or overlooked is the existence of other statutes enacted by our legislature, and by many others across the country, which forbid the driving of a motor vehicle while intoxicated and which set a prima facie standard by which one can be judged as too intoxicated to drive. For many years a person has been determined to be too intoxicated to drive if his blood alcohol content exceeded a certain level.

It seems more reasonable to believe that the legislature intended this type of statute to protect its citizens against the wrongs of the drunken driver. We believe that if liability, as sought by appellants here, is to be established it should be done forthrightly by the legislature in the form of a dram shop act, rather than by judicial construction.

Undesirable results have been demonstrated to result by following of the rationale urged by appellants. For example, in *Rappaport* the court, utilizing a statutory interpretation as is urged upon us by appellants here, found liability when a purveyor of intoxicants served an already intoxicated customer and the customer later had an automobile accident injuring the plaintiff. The court there stated that the results were limited to factual patterns involving the serving of liquor by a licensed retailer in violation of a statute and would not apply to a situation involving the dispensing of liquor by a private person. We submit that it is further illogical to adopt a rule which punishes through the establishment of civil liability one type of purveyor of intoxicants and not another type simply on the basis that one was a licensed commercial establishment which sold liquor and the other was a friend who gave the liquor away. See Carr v. Turner, 238 Ark. 889, 385 S.W.2d 656 (1965).

■ The above observations lead us to the belief that there was no intent on the part of our legislature to, in this fashion, establish this type of cause of action which is non-existent at common law. As above stated, some legislatures have adopted statutes commonly known as dram shop acts which establish liability of the type sought to be established here by appellants. We think it reasonable to assign to our legislators knowledge not only of the social scene and the evils contained therein, one of the greatest of which is the drunken driver, but also legislative developments in other states. In State for Use of Joyce v. Hatfield, supra, the Maryland court said:

"In the course of the last hundred years there probably has seldom, if ever (except during prohibition), been a regular session of the General Assembly at which no liquor laws were passed. On few subjects are legislators kept better informed of legislation in other states. In the face of the flood of civil damage laws enacted, amended and repealed in other states and the Volstead Act—and of the total absence of authority for such liability, apart from statute—the fact that there is now no such law in Maryland expresses the legislative intent as clearly and compellingly as affirmative legislation would."

We cannot believe that, having a clear and concise method of establishing such liability, our legislature did intend the artificial and esoteric meaning argued by appellants. The case of Moon v. Bullock, 65 Idaho 594, 151 P.2d 765 (1944), presented the question of whether the common law had been changed by the enactment of the wrongful death act to the end that an action for tortious conduct survived the death of the tort-feasor. Therein this Court said:

"If the courts are thereby commanded to create a remedy for a wrong where no remedy existed theretofore; or if they are to recognize a cause of action which abated by reason of the death of a necessary party to it, they would in many instances be called upon to legislate; it would often require them to modify or entirely override positive and well-established rules and laws. The books are full of instances where the courts have had to admit that existing law—statutory or common—did not do exact justice, or did not meet with our revised ideas of justice, but that the remedy lay, not with the courts, but with the Legislature.

\* \* \* \* \* \*

" 'Reverting, then, to our own state, we recognize that no legislative adoption is necessary to affirm the existence of the common law, but the statutory enactment is essential to repeal, abrogate or

change the rules or doctrine of the common law. The rules of the common law are not to be changed by doubtful implication. (Citing cases.) But where the implication is obvious it cannot be ignored. No statute is to be construed as altering the common law farther than its words and circumstances import.' "

This then brings us to the final determination regarding whether this Court should, in the absence of statute, declare a change in the common law. We think the answer must be in the negative. Our answer does not depend on our unwillingness to indulge in change. We are aware, as the commentators tell us, that the strength of the common law lies in its capacity to adapt itself to ever changing circumstances. Although traditionally hesitant to change, it should not fail to do so when a hoary doctrine loses its raison d'etre. We are aware that a minority of courts have acted as requested by appellants here. We are convinced that such courts are basically unable to disenthrall themselves of the lurking suspicion that liquor in and of itself is evil. This, in spite of the fact that the legislature here, as in almost every other state, has determined as public policy that liquor is part and parcel of our social scene. Abused it may be; evils it may produce; accidents, injury and death it may cause; marriages and homes it may rupture; unemployment, insolvency and degradation may result from its over use—but legitimate the selling and consuming of it is declared. Indeed both state and federal governments indulge in the taxation and/or wholesaling of it, from which flow great sums of money into governmental treasuries.

We are being asked to single out a particular type of business, which in every other aspect is legitimate and respectable, for the imposition of a liability otherwise unknown in the law. This, for the purpose of alleviating a major social ill in this country, that of mixing the two ingredients—alcohol and automobile. If such is to be done, it should be done by the legislature wherein all of the policy considerations can and should be carefully weighed and from which, per chance, liability of the type sought here will become a reality with the enactment of a dram shop act.

The judgment of the district court is affirmed. Costs to respondents.

McFADDEN, C. J., and SPEAR, J., concur.

PRATHER, District Judge (concurring specially in result, dissenting in part).

The crux of this case revolves around the question of whether or not a licensed purveyor of intoxicating liquors at retail can be held liable, as a matter of law, for the sale of intoxicating beverages to one who is already obviously, actually and apparently intoxicated. This question is really a question of whether or not this Court will say as a matter of law that such sale could or could not be the proximate cause of the ensuing automobile accident.

At the outset it should be remembered that this Court is not deciding the ultimate question of liability. That question will be decided by a jury. What this Court is really deciding is whether or not a plaintiff will have the opportunity to prove to a jury, by a preponderance of the evidence, that further sale of intoxicating liquor to a person who is already obviously, actually and apparently intoxicated can be the proximate cause of ensuing injury caused by the acts of the intoxicated person. The plaintiff will have to prove by a preponderance of the evidence that the person in question was, at the time, obviously, actually and apparently intoxicated and will have to prove by a preponderance of the evidence that the bartender knew, or should have known, such fact. Furthermore, the plaintiff, to be successful upon such a cause of action, would have to prove by a preponderance of the evidence that the serving of the additional drinks of intoxicating liquor, after the subject person was already obviously, actually and apparently intoxicated, was a contributing proximate cause of ensuing injuries caused by the subject person to others.

This is a case of first impression in the State of Idaho and it will be necessary to find our answers upon general and fundamental principles of the law of torts. At the outset we are guided only by I.C. § 73-116, which provides:

"The common law of England, so far as it is not repugnant to, or inconsistent with, the constitution or laws of the United States, *in all cases not provided for in these compiled laws*, is the rule of decision in all courts of this state." (Emphasis supplied)

Idaho has adopted a complete statutory scheme which covers the questions involved and results in a denial of relief to the plaintiffs herein. The first legislature of the State of Idaho in 1891 (S.L.1891, § 5, p. 34) adopted provisions for the regulation of the sale of intoxicating liquors. One of the provisions was § 5 thereof and another provision was § 9 thereof.[1] These provisions were carried forward into the Idaho Political Code (1901), Chapter 58, § 1507, and in slightly amended form became Revised Codes of Idaho (1908), Chapter 33, § 1511, and were in effect when the entire State of Idaho adopted prohibition. S.L. 1915, Chapter 28, §§ 1, 2 and 3.[2] Chapter 28 of the 1915 laws constituted the entire State of Idaho a prohibition district. Chapter 11 of the 1915 S.L. defines and sets forth a prohibition district. It is noted that Chapter 28 of the 1915 laws does not contain any provisions attempting to repeal any other laws of the State of Idaho. Chapter 11 of the 1915 S.L. does contain language (§ 24) that "all other Acts and parts of Acts in conflict herewith are hereby repealed."

The writers and publishers of the compiled laws (1918) in a note preceding Title

1. "Section 5. Any wife, mother, father, son, daughter or sister of a person who is a habitual drunkard, or in the habit of getting intoxicated, or the county commissioners, or the mayor of any city, or any county officer, may make complaint to any justice of the peace of the precinct where such person resides or may be staying, or to the probate judge of the county where such person resides or may be staying, alleging the name of such person, the fact of his being a habitual drunkard or in the habit of getting intoxicated, and the name or names of the person or persons from whom the person having such habits obtains his liquor, as such relative or officer believes, which complaint shall be verified by the person making the same; whereupon said justice of the peace or said probate judge shall issue a notice in writing to such person or persons so named, notifying him or them that no intoxicating liquors of any kind must be sold or given away by him or them, or at his or their place or places of business, to such person having such habit, and which notice must at once be served upon such person or persons as summons are served from justice courts. After the service of such notice, if any person or persons so notified shall sell, give away, or permit any person at his place of business to sell or give away, any intoxicating liquor to such person about whom he or they have received notice as aforesaid, his or their license to sell liquor shall, from that time, be deemed and held to be cancelled and annulled; and said person, and each of said persons, if more than one, shall be guilty of a misdemeanor and be liable in a civil action brought in the name or for the benefit of the person making such complaint, in the sum of two hundred dollars for each offense, and the wife, if there be one, may bring such suit without uniting her husband as a party to the action."

"Section 9. Every person with or without a license who shall sell or give away to any person already intoxicated any spirituous, malt or fermented liquor or wine, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined in any sum not less than one hundred dollars nor more than three hundred dollars, or imprisoned in the county jail not to exceed six months."

2. "Section 1. The manufacture, disposal and transportation of intoxicating liquors for beverage purposes are prohibited in the State of Idaho.

"Sec. 2. The State of Idaho is hereby constituted a prohibition district, and all statutory provisions now or which may hereafter be in force in prohibition districts, so far as the same are not inconsistent herewith, are made applicable and operative for the enforcement hereof.

"Sec. 3. This Act shall be in force and take effect on and after January first, 1916."

20, Chapter 116, at page 662, assumed that these 1915 laws repealed the 1891 law and its amendments. But the annotator's sweeping conclusion is too broad. The compiler of the 1918 laws said in his note, "it (S.L. Ch. 28, 1915) superseded—various other statutory provisions recognizing the liquor traffic as a licensed occupation." With that conclusion this writer does not agree. Examination of § 5 and § 9 of the 1891 law reveals that they deal with other matters of liquor traffic than that of sale by licensed vendors. The 1918 publisher also stated he was relying upon the cases of In re Crane, 27 Idaho 671, 151 P. 1006, L.R.A.1918A, 942 (1915); Chas. L. Joy & Co. v. Carlson, 28 Idaho 455, 154 P. 640 (1916); and State v. Frederic, 28 Idaho 709, 155 P. 977 (1916). The compiler and publisher of the 1918 Compiled Laws did not place good reliance upon those cases. Examination of them reveals that they do not in any way discuss or deal with the subject matter contained in § 5 and § 9 of the 1891 law.

When a new law does not expressly, by direct reference, repeal a prior law there are various rules that govern the deliberation of courts in deciding whether or not the prior law has, in fact, been repealed. The intention of the legislature in enacting the alleged repealing act is controlling. A statute which expressly repeals so much of an earlier statute as is inconsistent therewith evinces a clear legislative intent that the earlier statute shall stand in respect of its other provisions. A general provision in an act to the effect that all acts or parts of acts inconsistent or in conflict therewith are repealed, has been regarded as a strong implication, or an express recognition of the fact, that there may be acts or parts of acts on the same subject which are not thereby repealed. Where an act, which is not a complete law within itself covering the whole subject, contains a provision to the effect that all laws and parts of laws inconsistent or in conflict therewith are repealed, the repeal extends to conflicting statutes and provisions only; all laws and parts of laws not in conflict therewith are left in full force and effect. 50 Am.Jur., Statutes, § 518 and § 520.

Repeals by implication are not favored in the law. State v. Martinez, 43 Idaho 180, 250 P. 239 (1926); Engelking v. Investment Board, 93 Idaho 217, 458 P.2d 213, filed June 30, 1969; and 50 Am.Jur., Statutes, § 538. A repeal by implication is carried no further than is required to gratify the legislative intent manifested in the later act. 50 Am.Jur., Statutes, § 535. The implication of a repeal, in order to be operative, must be necessary, or necessarily follow from the language used, because the last or dominate statute admits of no other reasonable construction. The courts will not hold to a repeal if they can find reasonable grounds to hold to the contrary; if two constructions are possible, that one will be adopted which operates to support the earlier act, rather than to repeal it by implication. Only a clear repugnancy between the new and the old acts requires the old act to give way and then it gives way only to the extent of the repugnancy. John Hancock Mutual Life Insurance Co. v. Haworth, 68 Idaho 185, 191 P.2d 359 (1948); Georgia v. Pennsylvania Railroad Co., 324 U.S. 439, 65 S.Ct. 716, 89 L.Ed. 1051; Engelking v. Investment Board, supra; and, 50 Am.Jur., Statutes, § 538. Since laws are presumed to be passed with deliberation, and with full knowledge of existing ones on the same subject, it is but reasonable to conclude that the legislature, in passing a statute, did not intend to interfere with or abrogate any former law relating to the same matter, unless the repugnancy between the two is irreconcilable. Except where an act covers the entire subject matter of earlier legislation, is complete in itself, and is evidently intended to supersede the prior legislation on the subject, a later act does not, by implication, repeal an earlier act unless there is such a clear, manifest, controlling, necessary, positive, unavoidable, and irreconcilable inconsistency and repugnancy, that the two acts can not, by a fair and reasonable construction, be reconciled, made to stand together, and be given effect or enforced con-

currently. Moreover, a statute is only repealed by the repugnancy of matter in a subsequent statute to the extent of such repugnancy, and if any part of the earlier act can stand as not superseded or affected by the later act, it is not repealed. 50 Am.Jur., Statutes, § 543. For one statute to repeal another by implication, they must both relate to the same object or purpose. 50 Am.Jur., Statutes, § 545. The policy against implied repeals has peculiar and special force when conflicting provisions, which are thought to work a repeal, are contained in a special or specific act in a later or general or broad act. In such case, there is a presumption that the general or broad law was not designed to repeal the special or specific act. 50 Am.Jur., Statutes, § 564.

Applying the above rules we find that neither Chapter 11 nor Chapter 28 of the 1915 Session Laws repealed § 5 and § 9 of the 1891 laws. In § 5 of the 1891 law, we note that the person making complaint was to name only the person from whom his relative, having intemperate habits, obtains his liquor. It is noted that this is applicable to any person and not just a licensed vendee. Likewise, upon receiving the complaint the justice of the peace issued a notice to the "person." The act went on to provide, as penalties in the event any person that was so notified made a sale to the interdicted person, that the one doing so could lose his license if he had one, was subject to a misdemeanor penalty, and was subject to a civil action for damages limited to the amount of two-hundred dollars ($200.00) for each offense. It is also noted that said § 5 applied not only to sales but to the giving away of intoxicating liquor. No such provisions as are contained in § 5 of the 1891 law are found in Chapters 11 or 28 of the 1915 laws. It should be further noted that the 1915 laws provided that licensed pharmacists or members of the clergy were permitted to have intoxicating liquors in their possession. Therefore, even after adoption of the laws in 1915, § 5 of the 1891 laws continued to have applicability. Likewise, § 9 of the 1891 laws

charged that every person, whether he had a license for the sale of liquor or not, was not to sell or give away liquor to any person already intoxicated. No such provisions are found in either Chapter 11 or Chapter 28 of the 1915 law. So again, keeping in mind that there were persons who could lawfully have intoxicating liquor in their possession, it is apparent that § 9 of the 1891 law continued to have efficacy and applicability after adoption of the 1915 laws. Sections 5 and 9 of the 1891 law, not being inconsistent with the prohibition laws of 1915 they were therefore not repealed by the 1915 laws and are to this day in full force and effect.

The purposes of §§ 5 and 9 of the 1891 law and of the prohibition laws of 1915 are not inconsistent. Art. 3, § 24 of the Constitution of the State of Idaho provides as follows:

"The first concern of all good government is the virtue and sobriety of the people, and the purity of the home. The legislature should further all wise and well directed efforts for the promotion of temperance and morality."

Sections 5 and 9 of the 1891 law are obviously well calculated to carry out these constitutional mandates. Likewise, the prohibition laws of 1915 were so calculated.

Concluding that §§ 5 and 9 of the 1891 law are still in full force and effect, the question becomes whether such laws provide or prohibit a right of recovery to the plaintiffs herein. It is obvious from considering §§ 5 and 9 of the 1891 law together that the legislature was considering the problem of intoxicated persons who obtain more liquor after they are already intoxicated. Having had this problem before it, and having considered the problem, the legislature concluded to give a limited right of civil damages pursuant to § 5 and provided only a penal remedy in those cases not covered by § 5. Having the problem before it, and the legislature having acted upon it, any claim based upon facts such as plaintiffs claim herein must fall before the rule of statutory construction that *inclusio*

*unius est exclusio alterius.* Having considered the problem and acted as it did, it is evident that the legislative intent was not to afford persons such as plaintiffs herein any right of recovery. The judgment of the district court should be affirmed because of the continued efficacy of §§ 5 and 9 of the 1891 law which provided a complete legislative scheme upon the subject and excludes a right of recovery to plaintiffs.

Were it not for the statutory exclusions of plaintiffs' claim herein, I apprehend no reason that plaintiffs' action would as a matter of law have to be dismissed.

Many cases and texts are found wherein the broad and sweeping general statement is made that at common law there was no right of recovery by an injured third person against the party who sold intoxicants to one who subsequently injured such third person while intoxicated. As is usual with such broad statements it is an over simplification and a generalization and is not found to be entirely accurate. This supposed common law rule is predicated upon the reasoning that the drinking of the liquor is the proximate cause of the injury, not the furnishing of it. However, the common law rule is generally qualified to the extent of giving a right of action against one furnishing liquor in favor of those injured by the intoxication of the person so furnished, where the liquor was given or sold to a person who was in such a condition as to be deprived of his willpower or responsibility for his behavior or in violation of a prohibitory statute. 30 Am.Jur., Intoxicating Liquor, § 520. The key to the supposed common law rule of non-liability is found in the words "sale to ordinary able-bodied men." If we consider that the consumer of the alcohol is healthy, sober, and not known to be addicted to consuming alcohol to the point of becoming intoxicated, the common law rule is logical as the supplier of the liquor should not be bound as a matter of law to foresee that such a person would drink to the point of intoxication. On the other hand, if the person, to whom the liquor was sold or given, was in such a state of helplessness or debauchery as to deprive him of his willpower, or responsibility for his behavior, an entirely different situation would exist. In such latter situation, the common law has recognized that there is a right of recovery by those injured by the subsequent acts of the intoxicated person. 30 Am.Jur., Intoxicating Liquor, § 521. (See cases annotated in 130 A.L.R. 353 and 75 A.L.R.2d 833.) Under the I.R.C.P., a complaint is sufficient if it states facts that will advise the defendant generally of the nature of the claim made against him. The plaintiffs' complaint herein is sufficient under the I.R.C.P. to permit the plaintiff to prove that Freeman was not, at the time of the sale of the liquor to him, an ordinary able-bodied man and thus enable plaintiffs to bring their cause within the exceptions to the general common law rule.

I can not agree with the fundamental premise of those cases holding that there can be no liability on the part of one furnishing or supplying intoxicating liquor to another who is intoxicated when such other subsequently injures an innocent third party because of such intoxication. We can at once dismiss from consideration cases considering claims for damages or injuries suffered by the intoxicated person himself or by his surviving heirs. The acts of the intoxicated person himself would be sufficient to constitute contributory negligence that would prohibit such recovery. However, there can be no such contributory negligence charged against the innocent third person injured by the intoxicated party. Some courts cling steadfastly to the myth that it is the drinking and not the sale that is the proximate cause of the ensuing injury and are wearing blinders when it comes to observing the ordinary course of human events. It is quite ordinary to observe that persons who commence drinking intoxicants pass through various stages from complete sobriety to incapacitating intoxication and unconsciousness. It is quite observable that the first small amounts of liquor do not affect the person's ability to control himself and his actions. When the

person has imbibed sufficient liquor that the effects thereof are becoming obvious to the ordinary person, the imbiber is still able to control himself and his actions sufficiently to avoid injury to others. If the imbiber continues to drink intoxicants, however, his condition will worsen until he reaches the point that he can not control his thought or muscular processes. After the first signs of apparent and obvious intoxication have begun to show on a person who is drinking, it is within the knowledge and experience of nearly all people that such person should not indulge in any further use of intoxicants until his body has rid itself of that which he has already imbibed. When so viewed, I perceive no difference in regarding the sale of further intoxicants to one already drunk as a proximate cause of ensuing injuries and in those cases wherein the sale of firearms to minors or incompetents, the sale of explosives to minors or incompetents, the sale of dangerous drugs to those known to be addicted, or the manufacture and release upon the market of dangerously defective commodities are held to form a basis for liability. The underlying principle of all of these cases is that the seller is sending out into the public a thing of danger which a reasonably prudent person under like circumstances would apprehend would be likely to cause injury to someone else.

When most people walked and few had horses or carriages, or even in the days when the horse and buggy was a customary mode of travel, it may have been that the common law rule of non-liability arising from the sale of liquor to an intoxicated person was satisfactory. But the situation then and the problem in today's society of the imbiber going upon the public highways and operating a machine that requires quick response of mind and muscle and capable of producing mass death and destruction are vastly different. While it is true that I.C. § 73–116 directs that the common law of England is in force in this state, this does not mean that we must continue to apply the law as it existed in 1864 when I.C. § 73–116 was adopted.

The common law only applies insofar as it is adaptable to the wants and necessities of its people. 15 Am.Jur.2d, Common Law, § 11. Statutory provisions adopting the common law as it exists at a particular time do not alter the flexibility and capacity for growth which characterize the common law. 15 Am.Jur.2d, Common Law, § 12. Common law rules will be recognized and adopted when they meet conditions existing in the state, and they will not be allowed to control when the conditions are those not contemplated by the common law. 15 Am.Jur.2d, Common Law, § 13. It is obvious that in 1864 the modern high-powered automobile and highway was not contemplated by the common law. Young v. Wright, 77 Idaho 244, 290 P.2d 1086 (1955). The courts may disregard the common law entirely when it is not suited to the habits and necessities of the people. Revision of an outmoded common law rule is within the competence of the judiciary, and indeed it is the duty of the courts to bring the law into accordance with present day standards of wisdom and justice. Courts must recognize that the law is not static; the great body of laws is the great product of progressive thinking which attunes traditional concepts to the needs and demands of the changing times. A court should not be bound by an early common law rule unless it is supported by reason and logic. 15 Am.Jur.2d, Common Law, § 14.

As hereinabove demonstrated, it affronts and abuses one's sense of logic to contend that in today's society that the furnishing of more intoxicants to one who is already actually, obviously and apparently intoxicated can not be a contributing proximate cause of ensuing automobile accidents caused by the intoxicated person. This court has not hesitated to change the common law when it no longer meets the needs of modern day society. Renner v. Edwards, 93 Idaho 836, 475 P.2d 530 (1969); and State v. White, 93 Idaho 153, 456 P.2d 797, filed June 30, 1969.

None of the cases decided since 1947, that this writer has been able to read, have

had the courage to face forthrightly the question of whether or not the old common law rule of nonliability continued to meet the needs of modern society. The courts found it easier to escape responsibility behind the hoary doctrine of *stare decisis*. They occasionally attempt to bolster their courage by criticizing those courts that did squarely examine the social problems involved as being unable to disenthrall themselves of the lurking suspicion that liquor in and of itself is evil. It might equally be said that such courts are unable to disenthrall themselves of the mystic of the ancient common law or the fear that some bartender be held responsible for his acts. The courts clinging to the old common law rule further bolster their position by contending that the legislatures have recognized liquor as part of the public policy and the social scene in that they have legitimatized the manufacture and sale thereof, and derive great revenue from taxation thereof. Such reasoning would as well apply, for example, to the manufacture and sale of automobiles or of a loaf of bread. Such manufacture and sale is authorized by law, is supervised and regulated, and yields great revenue to the state. Yet the courts have never found this a reason to deny liability for an unlawful operation of an automobile nor to deny liability for the sale of a poisoned loaf of bread.

Some complain of illogic in holding a licensed retailer of liquor to such a liability for selling to an intoxicated person and not exacting the same liability of a friend who might give the intoxicated person more liquor. Such illogical result need not follow. If the giving of more intoxicating liquor to one who is already intoxicated can be a contributing proximate cause of ensuing injury caused by the intoxicated person, then the rule would apply to both the licensed and the unlicensed dispensers or furnishers of intoxicating liquor. In view of the damage caused by intoxicated drivers upon the highways there would seem to be sound public policy in holding to some degree of accountability those who wish to dispense liquor to intoxicated persons whether they be licensed retailers or generous friends.

The discussion of the old common law and whether it should or should not be continued in Idaho is probably academic. Idaho in 1891 changed the common law. The common law of England in 1864, which was adopted by I.C. § 73–116, did not contain any prohibition, either court made or statutory, against the sale of intoxicating liquor to one who was already intoxicated. In 1891 the Idaho legislature enacted a statute prohibiting such sales. S.L. 1891, § 9, p. 36. As set forth hereinabove, this section is still the law of the State of Idaho and has never been repealed. The enactment in 1947 of what is now I.C. § 23–929 is not inconsistent with the 1891 law. The 1947 law applied only to licensed retail liquor sellers, whereas the 1891 law applied to every person whether with or without a license for retail sale of liquor. Thus, since 1891 has the common law been abrogated in Idaho.

The violation of a statutory provision containing a mandate to do an act for the benefit of another, or a prohibition against the doing of an act which may be to his injury, is generally regarded as giving rise to a liability and creating a private right of action, whenever the other elements essential to a recovery are present. This is true regardless of actual negligence on the part of the violator of the statute, and although no actions are given in express terms by the statute. Jorstad v. City of Lewiston, 93 Idaho 122, 456 P.2d 766, filed July 9, 1969. The test whether an individual injured by the violation of a statute may recover from the wrongdoer has been declared to be whether the legislature intended to give such right. The absence of express provision for civil liability in case of the violation of a statute does not negate the existence of the legislative intent that the statute shall affect private rights; the intention to impose the liability may be inferred. Sometimes the violation of a statute is regarded as actionable in and of itself on the theory of nuisance or of negligence per se. Jorstad v. City of Lewiston,

supra. The liability is said to arise through the operation of common law principles. There is no difference in the quality or character of an action whether it has its origin from the principles of common law, as formulated by decisions of the court, or whether it has its own origin in the declared word of the legislature as expressed by its legislative enactments. Am.Jur., Statutes, §§ 584 and 585.

The foregoing principles have been recognized and applied by the Supreme Court of the State of Idaho. In Curoe v. Spokane & Inland Empire Railroad Co., 32 Idaho 643, 186 P. 1101, 37 A.L.R. 923 (1920), a railroad had allowed combustible material to collect upon its road right-of-way. A fire commenced thereon and spread from the railroad right-of-way to adjoining lands of the plaintiff. There was no allegation or contention that the fire had been started or caused by the railroad. Compiled Statutes, §§ 2948 and 8346 provided that a railroad keep its right-of-way clear of cumbustible materials and that if it permitted a fire to spread from its right-of-way to adjoining lands was guilty of a misdemeanor. The railroad was held liable. The Supreme Court of Idaho said:

> "Appellants (railroads) liability arises from a violation of its duty in that it permitted an accumulation of combustible material to remain on its right of way * * *. This was a violation of the law enacted for the protection of respondent, and others like situated, and constituted negligence resulting in damage for which this action is maintainable."

The foregoing is followed in the case of Carron v. Guido, 54 Idaho 494, 33 P.2d 345 (1934). In the Carron case, plaintiffs sued the defendant for the death of plaintiffs' minor son and based their cause of action upon the contention that defendant had sold ammunition to their son in violation of I.C.A. § 17–2715, which prohibited the sale of ammunition to a minor under the age of sixteen (16) and made such act of sale a misdemeanor. The allegations of the complaint were proven and the trial court granted a non-suit. The granting of the non-suit was reversed by the Idaho Supreme Court and after pointing out that the decedent was killed by the unskillful and careless handling of the pistol by a companion of the plaintiffs' son, the court said:

> The violation of a law, intended for the protection of a person and others like situated, which results in his injury and is the proximate cause of it, is negligence per se."

In the Carron case, in considering the question of the acts of the negligent handler of the gun, which herein may be considered as analogous to the arguments that it is the drinking and not the sale of the liquor that causes the injury, the Idaho Supreme Court quoted with approval the following language:

> "It is firmly settled that the intervention of a third person or of other and new direct causes does not preclude a recovery if the injury was the natural or probable result of the original wrong. * * * The rule goes so far as to hold that the original wrong-doer is responsible, even though the agency of a second wrong-doer intervened. * * * where an act unlawful in itself is done, from which an injury may reasonably and naturally be expected to result, the injury, when it occurs, will be traced back and visited upon the original wrong-doer."

The Curoe and Carron cases, supra, were cited in Pittman v. Sather, 68 Idaho 29, 188 P.2d 600 (1947), by the Idaho Supreme Court for the proposition that negligence per se is the violation of a statutory duty. In the case of Anderson v. Blackfoot Livestock Commission Co., 85 Idaho 64, 375 P.2d 704 (1962), the Carron and Curoe cases, supra, are cited for the support of an instruction given the jury that:

> "You are instructed that the violation of a statute or regulation made by a state agency under authority of statute, intended for the protection of a person and

others like situated, which results in his injury and is the proximate cause of it, is negligence per se."

In Bale v. Perryman, 85 Idaho 435, 380 P.2d 501 (1963), the Idaho Supreme Court held that I.C. § 49–713 was a safety measure enacted for the protection of all persons using roads and highways and again, following Carron, supra, held that violation of a law, intended for the protection of a person and others like situated, which results in his injury and is the proximate cause, is negligence per se.

There is a great analogy herein with Title 49, Chapter 7 of the Idaho Code which provides rules for the operation of automobiles upon the roads and highways of Idaho. Nowhere in Chapter 7 of Title 49 has the legislature declared that the violation of any part thereof was intended to give a right of civil damages to any person injured by one violating said sections. Yet in Bale v. Perryman, supra, and in numerous other cases this Court has said that the violation of such statute is negligence per se. It is significant that in enacting Chapter 7 of Title 49 or any of its predecessor sections, even in fact its original parent Chapter 179 of the 1913 Session Laws, the legislature did not ever declare that these rules for the operation of motor vehicles were enacted for the safety of persons or property in the State of Idaho. In contrast, Chapter 274 of the 1947 Session Laws, which enacted what is now I.C. § 23–929, also enacted I.C. § 23–901 wherein it is expressly said:

"The restrictions, regulations, and provisions contained in this act are enacted by the legislature for the *protection,* health, welfare *and safety of the people* of the state of Idaho and for the purpose of promoting and encouraging temperance in the use of alcoholic beverages within said state of Idaho." (Emphasis added)

In Jorstad v. City of Lewiston, supra, this Court, without discussing whether or not faulty design of a traffic divider was a proximate cause of plaintiff's injuries, held it was negligence per se for defendant City to not employ a licensed engineer pursuant to I.C. § 54–1218. In Jorstad, the Court relied upon I.C. § 54–1201, which declared that I.C. § 54–1218 was enacted "to safeguard life, health and property * * *." There is no logical difference between that language and the language in I.C. § 23–901 that declares I.C. § 23–929 was enacted "for the protection, health, welfare and safety * * *." In fact, it seems to this writer that there is of necessity far more probability of resulting injury in giving a drunk more to drink than in failing to consult a registered professional engineer. Nothing good can foreseeably come from giving a drunk more booze, but it is common knowledge that experienced contractors and carpenters may likely build perfectly safe and sound structures.

If, without legislative declaration, this Court can declare violation of statutes against accumulating combustible material along a railroad right-of-way, a statute against sale of firearms to a minor, and statutes prescribing rules of operation of motor vehicles upon a highway to give rise to negligence per se when violated, I do not see how this Court can escape declaring violations of I.C. § 23–929 negligence per se in view of the express legislative declaration that it was enacted for the safety of the people of the State of Idaho. Failure to perform a public duty owed to, or intended for the benefit of the individuals composing the public gives a cause of action to anyone injured by such failure. 65 C.J.S. Negligence § 4(8); Bale v. Perryman, supra; Carron v. Guido, supra; and Curoe v. Spokane & Inland Empire Railroad Co., supra.

DONALDSON, Justice (dissenting and concurring in part).

I dissent from the majority opinion and concur with that portion of Judge Prather's special concurring opinion which holds that by applying fundamental and well-established common law principles a cause of action is stated against a liquor vendor whose bartender in violation of a statute sells intoxicating liquor to an obviously in-

toxicated person under circumstances which should have warned the bartender that his sale would create an unreasonable risk and the subsequent acts of the intoxicated person results in injury to an innocent third person.

I dissent from that portion of Judge Prather's opinion which holds that §§ 5 and 9 of Chapter 33, 1891 Session Laws which became a part of the Revised Codes of Idaho (1908), §§ 1511 and 1515 are still in full force and effect.

In view of Judge Prather's extensive discussion and his conclusion that the enactment of the prohibition laws did not repeal §§ 1511 and 1515 of the Idaho Revised Codes it is necessary to review some general principles of statutory construction in detail. The basic rule was announced nearly one hundred years ago by Justice Stephan J. Field in United States v. Tynen:

> " * * * and even where two acts are not in express terms repugnant, yet if the latter act covers the whole subject of the first, and embraces new provisions, plainly showing that it was a substitute for the first act, it will operate as a repeal of that act." United States v. Tynen, 78 U.S. (11 Wall.) 88, 92, 20 L.Ed. 153, 154 (1871).[1]

As in most matters of statutory construction, general rules or maxims of this sort are only useful as shorthand notations for the logical processes which the courts must follow to reach results in particular cases.[2] But this rule, upon an examination of the cases, does seem more clearly and precisely to embody the relevant considerations in the decision-making process than do most maxims of statutory interpretation. Still, each case, in the area of implied repeals especially, must be decided on its own merits in the light of clear reasoning and with guidance from past decision.

The most important two criteria which must be met to find an implied repeal of the sort which Justice Field's rule envisions are that the repealing enactment must be a thorough, comprehensive scheme of regulation, and that it must have the same legislative "purpose," go to the same regulatory end as the repealed law.[3] Thus, taking the second criterion first, there is much talk in the cases to the effect that a subsequent general law will not repeal a prior specific or "special" law. Some of these cases actually turn on the failure of the alleged repealing act to meet the first criterion of comprehensiveness. Leaving those to one side, what the maxim about general not repealing specific often means is that the subsequent act's purpose is, in general, to regulate, to deter or to inspire conduct of a kind or quality which is quite different from that which the prior act, in its regulatory context was supposed to reach. In the case of John Hancock Mut. Life Ins. Co. v. Haworth, 68 Idaho 185, 191 P.2d 359 (1948), thus, this court paid its respects to the general versus special

1. *Accord, e. g.,* United States v. Lovely, 319 F.2d 673 (4th Cir. 1963); The Paquette Habana, 175 U.S. 677, 685, 20 S.Ct. 290, 44 L.Ed. 320, 323 (1900); Kramer v. Beebe, 186 Ind. 349, 115 N.E. 83, 85 (1917). *See* Lloyd v. Diefendorf, 54 Idaho 607, 612, 34 P.2d 53 (1934).

2. *See* Noble v. Glenns Ferry Bank, Ltd., 91 Idaho 364, 367, 421 P.2d 444 (1966).

3. *See* State v. London, 156 Me. 123, 162 A.2d 150 (1960); State Board of Insurance v. Adams, 316 S.W.2d 773 (Tex. Civ.App.1958); United States v. Jordan, 109 F.Supp. 528 (D.C.D.C., 1953); Town of Montclair v. Stanoyevich, 6 N.J. 479, 79 A.2d 288 (1951); Troy Conference Academy, etc. v. Town of Poultney, 115 Vt. 480, 66 A.2d 2 (1949); Homer v. City of Fall River, 326 Mass. 673, 96 N.E.2d 152 (1951); Southward v. Wabash R. Co., 331 Mich. 138, 49 N.W.2d 109 (1951); Rosenthal v. City of Tacoma, 31 Wash.2d 32, 195 P.2d 102 (1948); Independence Ins. Co. v. Independent Life and Acc. I. Co., 218 S.C. 22, 61 S.E.2d 399 (1950); Hitchcock v. State, 213 Md. 273, 131 A.2d 714 (1957); McAdams v. Barbieri, 143 Conn. 405, 123 A.2d 182 (1956); Lane v. State, 165 Tex.Cr.R. 222, 305 S.W.2d 595 (1957); State v. Elam, 250 Minn. 274, 84 N.W.2d 227, (1957); State v. Morf, 80 Ariz. 220, 295 P.2d 842 (1956); State ex rel. Williamson v. Empire Oil Corp., 353 P.2d 130 (Okl.1960).

maxim, but also articulated the grounds for its decision at some length. Those grounds seem to have been that a subsequent "general" tax law could not repeal a prior "special" law to regulate the insurance industry.[4] Where, on the other hand, the prior "special" law is a part of an old regulatory scheme, the usual rule that Justice Field originally stated is given effect and the courts have had no difficulty in giving the former "specific" law no effect.[5] It is not always easy to determine whether the two allegedly conflicting laws are, in fact, directed toward the same evil or the same class of conduct. But this difficulty is one inherent in the interpretation of any ambiguous statutory situation. In such cases the court must endeavor to give effect to the "purpose" or the "policy" of the statute [6] (sometimes referred to as the legislature's intent), and the determination of what that "purpose" embraces is always a taxing enterprise. But it is a necessary one, nonetheless.

The existence of the other criterion, that the repealing law is, or is a part of, a comprehensive scheme or system of regulation, is an easier matter to determine. Generally this characteristic is only found in enactments of complete laws which control entire industries such as banking or insurance, or which regulate behavior which has some common defining characteristic as in the case of a complete motor vehicle code.[7] The most important thing is that the subsequent or repealing statute be complete. That is, that it appears that the more recent act's purpose is to cover the entirety of the law which goes to the same ends as it does.[8] Enactments which are merely amendatory or supplementary, therefore, will not act to repeal a prior act unless the conflict between the two is manifest.[9] But, if the new or repealing law represents a departure from the past and purports to be a complete legislative attack on the problem it will be held to repeal *all* previous laws in the old statutory scheme (provided, as we have said, that the prior law really is in the same category of regulation as the new act) whether they are directly in conflict with any particular provision in the new law, or not.[10] This nullification of the prior law occurs not because of any conflict of language but by the force of the completeness of the new scheme itself. If the new regulation is complete, then, as a system, by definition, it cancels out prior enactments which are not part of the new system. If it is comprehensive then it does not need to be supplemented by a prior act. And as a system it is presumed to have its own internal logic which will be abused by the intrusion of prior, non-systematic enactments. One aid in determining whether

4. *See* In re Whisaker, 134 F.Supp. 864 (D.C.D.C., 1955); State v. Buck, 200 Or. 87, 262 P.2d 495 (1953).

5. *E. g.*, Troy Conference Academy, etc. v. Town of Poultney, *supra*; Independence Ins. Co. v. Independent Life and Acc. I. Co., *supra*.

6. *See* Messenger v. Burns, 86 Idaho 26, 382 P.2d 913 (1963); Swain v. Fritchman, 21 Idaho 783, 795, 125 P. 319 (1912); City of Idaho Falls v. Pfost, 53 Idaho 247, 23 P.2d 245 (1933) (These cases are on construction of statutes to serve their purposes and to avoid discontinuities in application.).

7. *See, e. g.*, State v. Davidson, 78 Idaho 553, 309 P.2d 211 (1957), cited with approval in State v. London, *supra* (both motor vehicle cases); Southward v. Wabash R. Co., *supra* (wrongful death legislation); Independence Ins. Co. v. Independence Life & Acc. I. Co., *supra* (Insurance law); State v. Elam, *supra* (tax law enforcement.).

8. State v. London, *supra*; United States v. Jordan, *supra*; Homer v. City of Fall River, *supra* ("The enactment of a statute which seems to have been intended to cover the whole subject and supersedes the common law."); Rosenthal v. City of Tacoma, *supra*; Hitchcock v. State, *supra* (Where the legislature attempts to deal with "the whole subject matter," "a complete scheme of regulation" there is an actual and not an implied repeal.).

9. *See, e. g.*, State ex rel. Good v. Boyle, 67 Idaho 512, 186 P.2d 859 (1947).

10. United States v. Tynen, *supra*; The Paquette Habana, *supra*; McAdams v. Barbieri, *supra*; cases cited *supra*, note 8.

the new statutes are meant to cover the entire area, that is to be a comprehensive regulatory scheme, is the existence of a general repealing section of the sort found in § 24 of chapter 11 of 1915 Idaho Session Laws. If a law is merely supposed to amend or supplement a particular former statute, presumably the legislature could have explicitly stated what former law was being superseded. On the other hand, when the legislature enacts a general repealing section this may be interpreted as an expression of a legislative "intent" that its most recent enactment should be construed as a comprehensive regulatory system superseding all prior laws which were part of the old scheme.[11]

If we proceed from these admittedly general principles distilled from the cases to the problem at hand, it seems clear that the enactment of prohibition, especially in the form the 1919 codifiers found it, was the sort of complete and comprehensive regulatory scheme which, following Mr. Justice Field's general rule and the case law, will act to nullify the entire preceding law in the field.

The first and most important task is a careful consideration of the two sections which the code compiler in 1918 thought to have been repealed by the enactment of prohibition.

The essentials of Idaho Rev.Codes, § 1511 (1908), were enacted as § 5 of chapter 33 of 1891 Idaho Session Laws, entitled "An Act to Regulate the Sale of Intoxicating Liquors." That act appears on its face to have been considered a complete code for the regulation of commerce and consumption of alcoholic beverages. § 5, or § 1511 of Idaho Rev.Codes of 1908 seems to have been meant to strike at the vices of alcoholism and inveterate drunkenness. As carried into the 1908 Code it provided for a process, initiated by a complaint to a Justice of the Peace or a Probate Judge alleging that some person was a *habitual drunkard* and where such person got his

liquor. It required notice be given to the source of the liquor by service of process and notice to the public by publication that persons named and anyone on notice should not provide the named drunkard with any more alcoholic beverages. The complaint could be brought by the putative drunkard's wife, mother, father, son, daughter, sister, the county commissioners, the mayor, or any county officer. After that any person named in the complaint could lose his liquor license, if he had one, and would be guilty of a misdemeanor if he served the drunkard. Any person with notice, but not named in the complaint would be guilty of a misdemeanor for the same act. And, finally, any person named in the complaint who provided the habitual inebriate with an intoxicating beverage was liable for a fixed sum of two hundred dollars per offense, "in a civil action brought in the name or for the benefit of the person making such complaint."

There are several things worth noting about this law. One is that it was aimed at drunkards, habitual inebriates, drunk or sober. The evils against which this section was directed were those long-range, destructive effects which we may all rightly ascribe to addiction to alcohol. The foremost of these is the damage, if not death, of the basic social unit, the family; with that may come the myriad harms to individual members of the family, the increase in persons dependent on public support for their life's needs and the social and economic loss of an able-bodied person incapacitated while his mental and physical health is ruined by drink. All of these are cumulative, long-term and intangible harms, an obvious interpretation is that they are the evils which the statute sought to avoid, and not the immediate harms which a drunk might do in the frenzy or lethargy of his intoxication. To this end the statute accords relief only to those whose interests may be injured by the service of liquor to a person afflicted with alcoholism. It did not

---

11. *See* Anglin v. Mayo, 83 So.2d 918, 921 (Fla., 1956); McCollum v. Snipes, 213 S.C. 254, 49 S.E.2d 12 (1948).

matter whether he was drunk or sober at the time. No provision is made for relief in favor of a person immediately injured as a result of the drunkard's committing a tort during any particular period of intoxication. The civil relief which was granted is obviously not like normal tort damages. It was set as a fixed sum per offense, not unlike a criminal law fine. It bore no relationship at all to the amount of ascertainable injury which the plaintiff might have suffered. This sort of damages provision is not normally provided by legislators when they create a new tort remedy. It is, rather, a kind of provision designed to give relief to persons who have suffered an injury the costs of which are so difficult to ascertain as to make a normal damage remedy unavailable.[12] In this instance it is because the interests which the legislature was protecting were those of the family and the government of the drunkard. They are the parties who suffer in an intangible, long-term, and cumulative sort of way. The legislature, in protecting these special interests, sought to cut the alcoholic's bane off at its source by attacking all traffic in intoxicating beverages to the person so afflicted.

1891 Idaho Session Laws, chapter 33, § 9, Idaho Rev.Codes of 1908, § 1515 is another law attacking illegal traffic in alcohol. It made it illegal for anyone, licensed or not, to provide anyone else, drunkard or not, who was then intoxicated—no matter if he had never before tasted a drop of spiritous liquor. It was completely a criminal provision, it made no mention of any civil liability at all. It stated that any person providing liquor to an intoxicated person was guilty of a misdemeanor and could be imprisoned in the county jail for up to six months.[13]

Both of these sections were enacted as part of what purported to be a comprehensive and elaborate scheme for the regulation of all traffic and use of alcoholic beverages, 1891 Idaho Session Laws, chapter 33. The core of this system of regulation was a licensing procedure which depended on the county officials and the local probate courts, justices of the peace and municipal authorities for enforcement. This comprehensive scheme, as amended, was brought forward in the 1908 Codes, as a unit under the title "Police— Licensed Occupations—The Liquor Traffic." Thus, the two sections with which we are concerned, even though no license was necessary to trigger their effectiveness, were catalogued in the codified law of Idaho under "Licensed Occupations," which title comprehended practically all liquor regulation.

In 1915 the state of Idaho went dry. In that year another comprehensive scheme to regulate the use of and traffic in alcoholic beverages was passed and applied to the entire state. 1915 Idaho Session Laws, chapter 11, was entitled, "An Act Defining Prohibition Districts and Regulating and Prohibiting the Manufacture, Sale, Keeping for Sale, Transportation for Sale or Gift, and Traffic in Intoxicating Liquors and Prohibiting Drinking and Drunkenness in Public Places, in such Prohibition Districts, and Fixing Fines and Penalties and Repealing Chapter 27 and Chapter 99 of the Session Laws of 1913 (relating to pharmacy use of pure alcohol in local option

---

12. An obvious corollary to the $200 damages provision is the "In Lieu" damages section in the American Copyright law. 17 U.S.C.A. § 101(b) (1952). That allowance was specifically provided by Congress to give the "small" unknown artist recourse against the artistic or literary pirate, even though his actual cash loss might not normally be enough to support a suit. The same problem of proof of actual, compensible injury seems to be what motivated the legislature in enacting the civil damages provision of § 1511.

13. Because of the narrow class of persons allowed to be plaintiffs in § 1511 and the utter lack of a civil remedy in § 1515 it is very difficult to derive any notion that the legislature was enacting a "dram shop act" to comprehend all civil damage cases. The only inferences about the "intent" of the legislature which may be drawn from the bare language of the two sections is that in § 1511 a very special wrong was given a civil remedy and in § 1515 no civil remedy was thought of one way or the other.

areas)." Chapter 15 of 1911 Idaho Session Laws, The Search and Seizure law, was *made a part* of the new law by reference (the new law was not made an amendment of any prior enactment). And a specific repeal of a local control of pharmacy use of pure alcohol was adopted in favor of the provisions covering such use in the new law, and a general repeal of "all other Acts and parts of Acts in conflict" therewith was passed. This law was made applicable to the entire state ten days later when Chapter 28 of the same Session Laws was approved. And on January 1, 1916 the entire state became effectively a prohibition state.

This complete regulatory scheme (prohibition) came forward in the 1919 codification of the Compiled Laws of Idaho. The basic prohibitive section was C.S. 1919, § 2606:

> "It shall be unlawful for any person, firm, company or corporation, its officers or agents, to sell, manufacture or dispose of any intoxicating liquor or alcohol of any kind or to have in his or its possession or to transport any intoxicating liquor or alcohol unless the same was procured and is so possessed and transported under a permit as herein provided:" (following this is a proviso excepting wood or denatured alcohol.)

There are several sections following that basic prohibition which reinforce its mandate; they are: § 2619 "Possession of alcohol without a permit unlawful," § 2621 "Acquisition, transportation, sale and possession unlawful," § 2622 "Drinking in public a misdemeanor," several punishment sections, and § 2628 "Possession unlawful." Following this are the sections of the earlier enforcement laws which were explicitly extended to be applicable to the state-wide prohibition law. This includes 14 sections which prescribe a thick and elaborate substantive and procedural scheme designed to plug any human gaps in the regulation by stating the duties of each public official and by providing them· with a variety of legal devices with which to attack any sort of breach of the law. Finally, in 1917, the whole scheme was sewed up with a law providing for search of transportation facilities and confiscation of contraband.

This entire system of legislation was most complete in and of itself. Its theory was simply that all and any evils of intoxicating drink were to be reached and cured by outlawing all and any contact (saving two exceptions, pharmacists and clergymen) with strong beverage. It was not only illegal to give an alcoholic beverage to a drunk or drunkard, it was now illegal to give it to anybody at all, or even to have it about to give to someone. Where the theory of the old law was that liquor and its uses were legal, though subject to restraint, the theory of the new law was that it was absolutely illegal. Where the old law had to resort to sections of the sort discussed above to attack particular abuses, under the new law *any* indulgence was abuse and all abuses could be reached. The core of the old law had been the constant supervision which was inherent in the license, and, thus, the entire old law, as a unit, had been classified as a licensed occupation law. The new law was *sui generis;* its core was the blanket prohibition itself; and the regulatory apparatus was arrayed about that section and keyed to it specifically. According to the case of State v. Frederic, 28 Idaho 709, 155 P. 977 (1916), the new scheme was complete within itself, and the independently dry communities were divested of the jurisdiction which they had previously had to enforce the prohibition laws in any forum, but the district court or according to the state law procedure and under state law rules. State v. Frederic, *supra.*

Thus it is my conclusion that the legislature of Idaho had enacted a full, complete and comprehensive law to cover an entire area and which thus acted as a repeal of the prior law which existed on the same subject and which was designed to serve the same purpose.

Furthermore if there is doubt whether or not a legislative act impliedly or neces-

sarily repeals a prior law, such doubt may be resolved by subsequent legislative action consistent with such repeal.[14] In this case, there was subsequent legislative action. According to the preface to the Compiled Statutes of 1919, most of the compilation therein had been enacted as a code by the Fifteenth Session of the Idaho Legislature. 1919 Idaho Session Laws, Chapter 2. In the Compiled Laws which were enacted as a code, Chapter 116 was the law concerning prohibition. Appended to that chapter was a note explicitly calling attention by section number to the fact that a number of sections in the prior code had been deleted because they seemed to have been superseded by the prohibition law.[15] The control of spiritous beverages was certainly a hot issue in those days and it is reasonable to impute an awareness to at least some members of the legislature of just what had been deleted. There was also a general repealing section in those compiled laws which, as is customary and as the title of the enactment warned, purported to repeal all prior law which was not included in those laws.

In the early Idaho case of Territory v. Evans, 2 Idaho 651 at 654, 23 P. 232, 233, 7 L.R.A. 646 (1890), this court in considering the effect of a complete revision of the Idaho statutes said:

"One of the prime objects of a revision is the elimination of doubt. What is included therein must be construed together as the law, and all that formerly existed, and not included, is clearly repealed."

It is true that later on in the case of State v. Martinez, 43 Idaho 180, 250 P. 239

(1926), this court found that a prior law was not brought forward in the Code as a result of mere mistake and that it was not, therefore, repealed by the force of the codification alone. In regard to the repeal section of the Code the court also held that it was inapplicable because it only proposed to repeal sections involving matters which were provided for therein. It thus appears that in Idaho an omission will work a repeal except for an inadvertent omission. Further that a general repealer section in the Code will be given effect, but only if the matter in the omitted statute is touched on in the section of the Code.

In this instance the matter covered in the omitted sections is also a subject of several sections of the prohibition law. The change in the law is a full omission and not merely a change in the language. The sections omitted were flagged by a notice appended to the compilation by the compilers and presented to the legislators. The notice specifically mentioned the section numbers of the omitted material. The subject of the material, alcoholic beverages, was, to say the least, a hot issue both locally and nationally in the years around 1919. The Code was enacted as law with a proper title which also gave notice to the legislators and the public that some sections of the 1908 Code were omitted and that they would be considered repealed. It is hard to imagine a stronger case for giving the omission from the Code and the general repealing section full weight as law. The codification of the Compiled Laws of 1919 by Chapter 2 of 1919 Idaho Session Laws should therefore be given effect to the extent that it repealed § 1511 and § 1515 of Idaho Rev.Code of 1908.

---

14. Jordan v. Pearce, 91 Idaho 687, 690–691, 429 P.2d 419 (1967); *see generally* State v. Mayer, 81 Idaho 111, 338 P.2d 270 (1959).

15. Idaho Compiled Statutes of 1919, History, 745.